UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., JOHN R. PITTS, JR., M13166, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13 C 2937 |
| KIM BUTLER,[1] Warden MENARD CORRECTIONAL CENTER, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner John R. Pitts, Jr. was convicted of three counts of aggravated sexual assault in Illinois state court on February 4, 2009. He is currently confined at the Menard Correctional Facility in Menard, Illinois, serving a 75-year prison sentence for those crimes. On May 16, 2013, Pitts filed this habeas petition under 28 U.S.C. § 2254, seeking relief on three grounds: (1) the state trial court did not provide a "full and fair hearing" on Pitts's claim that his arrest was unlawful and that certain evidence against him should be suppressed; (2) trial counsel was ineffective for various reasons; and (3) state prosecutors relied on inadmissible hearsay at a hearing on the motion to quash arrest and suppress evidence.[2]

Respondent Kim Butler, warden at Menard, argues that Petitioner's claims are either not cognizable or meritless and that no certificate of appealability should issue. As explained below, the court agrees with Respondent, dismisses the habeas petition [6] on the merits, and declines to grant a certificate of appealability.

---

[1] During the pendency of this case, Kim Butler replaced Rick Harrington as Petitioner's custodian at the Menard Correctional Center. Butler has been substituted as the proper Defendant. *See* FED. R. CIV. P. 25(d)(1).

[2] The government admits that the petition is timely, that Petitioner has exhausted his state court remedies, and that the petition is not barred by non-retroactivity. (*See* Gov't Resp. [16], 5.)

**BACKGROUND AND PROCEDURAL HISTORY**

I.   **Arrest and Conviction**

On habeas review, federal courts presume a state court's factual findings are correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy,* 690 F.3d 811, 815 (7th Cir. 2012). The following facts are taken from the Illinois Appellate Court's decision affirming the trial court's judgment of conviction, as well as the trial court's ruling to grant in part and deny in part Pitts's motion to suppress statements he made to law enforcement after his arrest. (Rule 23 Order, *People v. Pitts*, No. 3-09-0439 (Ill. App. Ct. 3rd Dist. April 21, 2011) Ex. A [17-1] to Gov't Resp. [16] to Pet.'s Habeas Pet., hereinafter "Gov't Resp.")

On December 5, 2002, Pitts approached a woman (referred to as "A.S.") walking to work, forced her into his car, drove to a wooded area, and sexually assaulted her. A.S. looked at Pitts' face for several minutes during the attack. The victim was taken to a local hospital where a physician treated her and recovered DNA evidence from her body.

Nearly four years later, a different woman ("C.M.") spoke with Moises Avila, a detective in the Joliet, Illinois police department and told him she had been sexually assaulted. C.M.'s friend—identified in Petitioner's *pro se* filings as C.M.'s pimp—saw C.M. leave in the vehicle immediately before she was attacked and noted the license plate number; the plate was registered to Pitts and his wife. C.M. and the friend were shown photo spreads that included Pitts, and both identified Pitts as the attacker. A third woman ("J.R.") went to police in 2006, claiming she had been sexually assaulted in 2002. Scott Cammack, also a Joliet police detective, showed her a photographic lineup that included Pitts, and J.R. identified Pitts as her assailant. Based on the identifications made by C.M., her friend, and J.R., Avila applied for an arrest warrant for Pitts as well as a search warrant for Pitts's DNA. A state court issued the arrest and search warrants, and police took Pitts into custody on December 5, 2006.

2

Around 5:45 p.m. that day, Pitts signed a form advising him of his *Miranda* rights. Avila and Cammack then began to ask him about several unsolved sexual assault cases in the area. Pitts admitted that having sexual contact with C.M. and J.R., but asserted that it was consensual. At 6:00 p.m., Pitts agreed to provide a videotaped statement and a DNA sample to the detectives. The videotape interview began at 7:00 p.m. Around 8:20 p.m., another detective, Lieutenant Stein, entered the interview room and immediately spoke to Pitts in a loud voice, calling him a "fucking predator" and a "monster." Stein told Pitts that Pitts's family was going to learn "what he had done." Stein remained in the room with Pitts for three to five minutes. After the lieutenant left, Pitts admitted that he "had taken sex from women who were not willing participants." (*People v. Pitts*, No. 3-09-0439 (Ill. App. Ct. 3rd Dist. April 21, 2011), 3.) Pitts claimed he felt threatened by Stein and later explained that he provided incriminating statements because he thought the detectives would help him get counseling for his drug problem.

Pitts and Avila and Cammack took a short break before beginning a second videotaped interview. Five minutes into this second interview, Pitts complained of chest pains. The interview terminated, and Pitts was taken to a local hospital, arriving there, accompanied by law enforcement, at 9:35 p.m. Pitts was treated for "atypical chest pain," meaning it was not a heart attack or angina. Further testing later revealed that Pitts had cocaine in his system. At the hospital, Pitts told a law enforcement officer he wanted to speak with Avila and Cammack again when he returned to the police station.

Pitts was brought back to the station around 2:00 a.m. on December 6, 2006. The detectives gave him something to eat and allowed him to use the restroom. Pitts was once again reminded of his *Miranda* rights, said he understood them, and agreed to be videotaped a third time. In that interview, Pitts admitted that he had grabbed A.S., took her to a wooded area, and forced her to have sex with him.

Prior to his criminal trial for the assault of A.S., Pitts filed a motion to suppress incriminating statements he gave to police both before and after he went to the hospital, arguing that the statements were the product of police coercion and misconduct. After a hearing, the trial court granted his motion in part and denied it in part. The court stated that "no court would condone what [Stein] did," and acknowledged that Pitts's chest pain might have been partially induced by Stein's actions, though she concluded that the pain was "probably cocaine related." Ultimately, the court suppressed statements Pitts made before he went to the hospital (including the first and second videotaped interviews), but not the statements he made when he returned to the police station and confessed to the attack on A.S. In concluding that those later statements were admissible, the trial court noted that they were given after Pitts had been away from the police station for five hours and that Pitts had never complained to the doctors or nurses that he was mistreated by the police; instead, Pitts told a police officer at the hospital he wanted to talk to the detectives again. When Pitts returned to the police station in the morning of December 6, he was shown the *Miranda* rights form he had signed earlier, confirmed that he understood his rights, and agreed to another interview. Based on such findings, the trial court concluded that the statements Pitts made after he returned from the hospital were made without "any unlawful inducements" and were therefore admissible.

Pitts also filed a pretrial motion to quash his arrest and suppress evidence against him. (*See* St. Ct. Docket, Ex. O to St. Ct. Rec. [17-16], C96–100.) He alleged that the arrest warrant was not supported by probable cause because (a) the police did not disclose to the issuing judge the fact that J.R. had previously identified someone else as resembling her attacker, and (b) immediately after the alleged attack some three years prior, she provided a license plate number that was registered to a different person. (*Id.*) The trial judge denied the motion after a hearing. (*See* Oct. 27, 2008 Hearing Transcript, Ex. P to St. Ct. Rec. [17-17], hereinafter "Hearing Transcript," 341–392.)

At trial, prosecutors presented evidence that Pitts's DNA matched that found in vaginal swabs taken from A.S. Pitts's DNA profile "would be expected to occur in 1 in every 46 quadrillion black unrelated individuals." (*People v. Pitts*, No. 07-CF-107 (Ill. App. Ct. 3rd Dist. April 21, 2011) at 6.) A.S. testified that Pitts had held a knife to her throat, threatened to kill her, took her to a secluded area, and sexually assaulted her. (*Id.* at 10.) The jury ultimately found Pitts guilty on three counts of aggravated sexual assault against A.S.. (*People v. Pitts*, No. 07-CF-107 (Will Cnty. Cir. Ct.) Ex. O to St. Ct. Rec. at C169–71.) The trial court sentenced Pitts to three consecutive thirty-year prison terms, later reduced to three consecutive twenty-five year terms because of a miscalculation of state sentencing law. (*See id.* at C211, C372; Rule 23 Order, *People v. Pitts*, No. 3-09-0439 (Ill. App. Ct. 2011), Ex. A. to St. Ct. Rec. at 10–11.)

## II.   Direct Appeal and Post-Conviction Proceedings

Petitioner, represented by counsel, timely appealed his conviction to the state appellate court on August 31, 2010, arguing that the trial court should have suppressed all of his incriminating statements, not just the statements made before he went to hospital. (*See* Direct App. Br., Ex D. to St. Ct. Rec. [17-4].) The appellate court affirmed the trial court's ruling that statements Pitts made after returning from the hospital were admissible. The court noted, further, that any error in the admission of those statements was harmless in light of the extensive eyewitness testimony and DNA evidence offered at trial. (*People v. Pitts*, No. 3-09-0439 (Ill. App. Ct. 2011), Ex. A. to St. Ct. Rec. at 10.)

While Petitioner's direct appeal was still pending, he filed a *pro se* state post-conviction petition on November 30, 2010, *see* 725 ILCS 5/122-1 *et seq.*, raising two claims. (State Post-Conviction Pet., 07-C-107, Ex. O to St. Ct. Rec., hereinafter "State Post-Conviction Pet.," at C287–293.) First, Petitioner claimed that the police lacked probable cause to arrest him because of the discrepancies in J.R.'s identification of the perpetrator and because the trial court's decision to issue a warrant rested on Officer Cammack's hearsay testimony about J.R.'s identification. Petitioner also claimed he was denied his Sixth Amendment right to confront J.R.

5

about her identification—presumably to impeach her credibility by questioning her about prior statements in which she identified a different vehicle and implicated a different person as her alleged assailant. Second, Petitioner claimed that his trial counsel was ineffective in (1) failing to present A.S.'s composite sketch of the suspect (which Petitioner alleges did not resemble him); (2) failing to object to A.S.'s identification testimony, which Petitioner alleges was false; and (3) failing to object to Cammack's hearsay testimony at the hearing on his motion to quash arrest and suppress evidence. (*See* State Post-Conviction Pet. at C292.) The trial court dismissed the petition as "frivolous and patently without merit." (*See* Trial Court Order, Ex. O to St. Ct. Rec. at C297.) On appeal, Petitioner's court-appointed counsel moved to withdraw, arguing that Petitioner had no non-frivolous arguments to make in his post-conviction proceedings. (*See* Motion to Withdraw, Ex. J to St. Ct. Rec. [17-10].) Petitioner did not respond to the motion, and the appellate court granted it. (*See* Rule 23 Order, *People v. Pitts*, No. 3-11-0059 (Ill. App. Ct. 2012), Ex. I. to St. Ct. Rec. [17-9].) The court also affirmed the trial court's judgment denying the post-conviction petition. (*Id.*)

Petitioner then filed a *pro se* petition for rehearing of the post-conviction petition on May 16, 2012, raising two claims similar to those made in his original petition: first, that the court considered inadmissible hearsay testimony during the suppression hearing and denied Petitioner's right to confront J.R. at the probable cause hearing. Second, he contended that trial counsel was ineffective during the suppression proceedings for failing to object to (1) the hearsay testimony offered at the suppression hearing; and (2) the prosecution's failure to present the declarant, J.R. (*See* Petition for Rehearing, *People v. Pitts*, No. 3-11-0059, Ex. L to St. Ct. Rec. [17-12], 2–3.) The appellate court denied the petition on June 5, 2012 (Order Denying Petition for Rehearing, *People v. Pitts*, No. 3-11-0059, Ex. K to St. Ct. Rec. [17-11], and Petitioner's *pro se* petition for leave to appeal to the Illinois Supreme Court (PLA, *People v. Pitts*, No. 114793 (Ex. N to St. Ct. Rec. [17-14]), was denied on November 28, 2012. (*See*

Order Denying PLA, *People v. Pitts*, No. 114793, Ex. M to St. Ct. Rec. [17-13].)  Petitioner then filed this § 2254 petition.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs the standards for federal habeas relief from a state-court conviction and sentence.  28 U.S.C. § 2254.  Under § 2254(d), a habeas petitioner cannot prevail on a claim that was previously adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).  *See Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).  Federal review of a state court's decision is highly deferential, and the state court's decision will not be disturbed as long as it is objectively reasonable.  *Morgan*, 662 F.3d at 797.

Petitioner's § 2254 petition raises the following three claims:

1. **Claim One**:  Illinois failed to provide a "full and fair hearing" on Pitts's challenge to his arrest and motion to suppress.

2. **Claim Two**:  Petitioner's trial counsel was ineffective in (1) failing to investigate J.R., whose complaint formed part of the basis for the warrant for Petitioner's arrest; (2) failing to object to J.R.'s unavailability during the suppression hearing; (3) conceding that the officers did not engage in deliberate falsehoods in securing the warrant; and (4) failing to object to the denial of the motion to suppress or otherwise submit "a meritorious Fourth Amendment motion."

3. **Claim Three**:  The prosecution offered inadmissible hearsay at the hearing on Petitioner's motion to quash his arrest and suppress evidence.

The state concedes that Petitioner has exhausted state court remedies for his claims and that the petition is timely and not barred by non-retroactivity.  (*See* Gov't Resp. at 5.)  The court therefore addresses Petitioner's claims on the merits.

## I. Claims One and Three:

Petitioner challenges the state trial court hearing on his motion to quash arrest and suppress evidence on two grounds, which the court discusses together. In Claim One, Pitts argues that the Illinois court failed to provide a "full and fair hearing" on his claim that his arrest was not supported by probable cause and that the evidence against him should therefore have been suppressed.[3] This argument is based primarily on Petitioner's assertion that "[J.R.] was never made available to confirm or deny the prosecution's claim of probable cause for [the] issuance of warrants." (Habeas Pet. [6], Addendum at 2.) In Claim Three, Pitts argues that in determining that probable cause existed for his arrest, the trial court relied on hearsay evidence that "did not allow for reliable and trustworthy assurance to their claim of probable cause." (*Id.*) The court concludes that Claim One is not cognizable and that Claim Three is without merit.

A federal habeas court does not "reach[] the merits of a petitioner's Fourth Amendment claim so long as the state court granted him a full and fair hearing on the claim." *Monroe v. Davis*, 712 F.3d 1106, 1112–13 (7th Cir. 2013) (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)). This principle is the product of the Supreme Court's careful consideration of the costs and benefits of the exclusionary rule, which bars certain evidence obtained through unconstitutional action and exists to deter police from violating the Fourth Amendment. *Stone*, 428 U.S. at 492. The Court recognized that one cost of such a rule is that it obfuscates the "truthfinding process" of the justice system and allows certain guilty persons to go free. *Monroe*, 712 F.3d at 1113 (quoting *Stone*, 428 U.S. at 490). In federal habeas proceedings, the Court reasoned, the exclusionary rule's costs outweigh its deterrent benefits because federal habeas review does not provide enough further marginal deterrent benefit to outweigh "other values vital to a rational system of criminal justice," such as the "ultimate question of guilt and

---

[3] Exactly what evidence Petitioner sought to suppress is not clear from the record (*see* Mot. to Dismiss Charges, Ex. O to St. Ct. Rec. at C139), but the court understands that Petitioner contends J.R.'s identification of him should not have been admitted at the probable cause hearing, and that without such evidence, there was no probable cause to arrest him. (*See* State Court Docket, Ex. O to St. Ct. Rec. at C249.)

8

innocence." *Stone*, 428 U.S. at 494, 490. The Court thus held "that relief on a Fourth Amendment claim should normally be unavailable to a petitioner in habeas corpus." *Monroe*, 712 F.3d at 1114. The upshot is that so long as a petitioner has received a "full and fair hearing" on the merits of his Fourth Amendment claim in state court, a federal habeas court will not reach the merits of his claim. *Id.* at 112–13. In deciding whether the state court gave Petitioner a "full and fair hearing," this court's job "is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself] that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Id.* at 1114.

That test is met here. Petitioner's challenge to the propriety of the suppression hearing is that he was purportedly "denied his right to confront and cross-examine declarant, [J.R.], concerning [her] alleged out-of-court identification." (Habeas Pet., Addendum at 1.) The premise underlying this challenge is that an accused person enjoys the same right of confrontation at a pre-trial hearing that he has at trial. In fact, however, the Supreme Court concluded long ago that "[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page*, 390 U.S. 719, 725 (1968). There is, thus, no Confrontation Clause violation when the prosecution declines to produce a witness whose out-of-court statement is used to establish probable cause for arrest. *See, e.g.*, *McCray v. Illinois*, 386 U.S. 300, 313–14 (1967); *United States v. Malsom*, 779 F.2d 1228, 1236 n.9 (7th Cir. 1985) (noting that law enforcement have no duty to reveal the identity of an informant at a suppression hearing) (citing *McCray*, 386 U.S. at 311); *cf. United States v. Sasson*, 62 F.3d 874, 881 (7th Cir. 1995) (noting that the Supreme Court "has made it clear" that "the right to confrontation is a *trial* right" and does not apply to pretrial discovery matters) (citations omitted). There was no Confrontation Clause violation in this case. And even if there had been, the state court certainly did not

9

unreasonably apply clearly established law as determined by the Supreme Court in reaching the contrary conclusion.  *See* § 2254(d)(1).

The hearing transcript further supports this court's conclusion that Petitioner received a "full and fair hearing" on his Fourth Amendment challenges.  Petitioner's counsel was allowed to question detectives Avila and Cammack extensively about their investigation preceding the decision to apply for arrest and search warrants for Pitts.  (*See generally* Hearing Transcript, 343–81.)  Petitioner's counsel did challenge several aspects of the detectives' investigation, including the fact that neither detective personally witnessed the crime.  (*See, e.g.*, Hearing Transcript at 382:18–20.)  Counsel elicited an admission that when Avila presented his arrest warrant to the presiding judge, he unintentionally failed to disclose (1) that J.R. had previously given law enforcement a license plate number belonging to someone other than Pitts (Hearing Transcript at 364:16–24; 365:1–4, 10–12.); and (2) that J.R. had previously identified a different man as a possible suspect in the assault.  (*Id.* at 365:5–12.)  It is important to note here, though, that J.R.'s testimony was not the only evidence used to support the warrant applications.  C.M. and her friend had both identified Petitioner's car and had provided a license plate number; C.M. had identified Pitts in a photographic lineup as her attacker.  (Hearing Transcript at 385:15–23.)  J.R.'s identification, however flawed it may have been, was simply further corroborating evidence.  The trial court considered all these facts, along with relevant legal authorities (Hearing Transcript at 384:20–23, 386:16–23; 387:7–11), in deciding that probable cause existed to issue the warrants, despite the facts that J.R. had previously identified a different license plate number and different person as her alleged attacker.  The trial court therefore provided a "full and fair hearing" on the merits of Petitioner's motion to quash his arrest and suppress evidence, and this court will not second-guess that decision.  *See Monroe*, 712 F.3d at 1114.  Claim One is therefore not cognizable under federal habeas law.

Claim Three fares no better.  In it, Petitioner contends that the "state's offering of inadmissible hearsay testimony by Officer Cammack failed to establish the existence of reliable

10

and trustworthy probable cause for [the] issuance of warrants." (Habeas Pet. at 6.) Elsewhere, similarly, he maintains that the "merits of factual dispute [sic] were not resolved in the state hearing [because] [t]he state court's factual determination was based on inadmissible hearsay testimony offered by Off. Cammack in support of probable cause." (Habeas Pet. Addendum at 1.) Whether stylized as an argument that he did not receive a "full and fair hearing" on his Fourth Amendment claim or that the reliance on inadmissible hearsay alone entitles him to relief, the argument is meritless. As at a probable cause determination, a trial court is permitted to rely on hearsay evidence at a suppression hearing. *See, e.g.*, *United States v. Matlock*, 415 U.S. 164, 173–175 (1974) (concluding that the Federal Rules of Evidence precluding the use of hearsay at criminal trials do not apply to suppression hearings, and that a trial judge "should receive the evidence and give it such weight as his judgment and experience counsel"); *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009) ("Ultimately, the issuing judge must 'make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" *of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (emphasis added). Claim Three fails as a matter of law.

Finally, even if the court assumed for the sake of argument that Petitioner's arrest was not supported by probable cause and therefore unlawful, an illegal arrest "is an insufficient ground" to grant habeas relief. *See Sanders v. Israel*, 717 F.2d 422, 423 (7th Cir. 1987); *United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.") This principle—that an illegal arrest is not a defense to a valid conviction—stems from the idea that excluding certain evidence from a case "cannot deprive the Government of the opportunity to prove [the accused's] guilt through the introduction of evidence wholly untainted by the police misconduct." *Crews*, 445 U.S. at 474. At trial, the state presented DNA evidence linking Pitts to

the assault of A.S., as well as Pitts's third videotaped interview, in which he admitted that he forced A.S. to engage in sexual intercourse with him. A.S. herself testified at trial and identified Petitioner has her attacker. Any claim to habeas relief for an illegal arrest fails because Pitts was subsequently convicted of the charged crimes with evidence untainted by any alleged unconstitutional action.

## II. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner asserts that trial counsel committed numerous errors so severe as to render the trial proceedings fundamentally unfair. In assessing a claim of ineffective assistance of counsel, the court will "strongly presume" that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). The burden to demonstrate that counsel was deficient rests with Petitioner, who must establish two elements: "that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced as a result." *Jones v. Butler*, No. 14-1638, — F.3d —, 2015 WL 430436, at *6 (7th Cir. Feb. 3, 2015) (citing *Strickland*, 466 U.S. at 687–88). To satisfy the second element, Petitioner must show that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Petitioner claims that his trial counsel erred in the following ways: (1) by failing to investigate J.R. as being the prosecution's source of probable cause; (2) by failing to object to J.R.'s "unavailability to be confronted and cross-examined concern[ing] the alleged out-of-court identification"; (3) by stating at the suppression hearing that "there was no evidence that there was any deliberate falsehood or reckless disregard of the truth by the officers, when in fact there was substantial proof"; and (4) by failing to file a "meritorious Forth Amendment motion." (Habeas Pet. Addendum at 3.) The court addresses each claim in turn.

12

### A. Failure to investigate J.R. or object to her unavailability

The court concludes that Petitioner's counsel provided objectively reasonable representation in "investigating" J.R. prior to the suppression hearing. *Jones*, 2015 WL 430436 at *6. The hearing transcript reflects that Petitioner's counsel made the strongest arguments available concerning J.R, arguments that could only have been developed by "investigating" J.R. and her reliability as a witness. For instance, counsel elicited testimony at the hearing from both Avila and Cammack that J.R. had previously supplied a license plate number to law enforcement that came back registered to a white male from a different town. (*See* Hearing Transcript at 357:1–21; 379:6–18.) Counsel also established that J.R. had previously looked at a lineup and had identified a different man as her assailant. (*See id.* at 357:22–24; 358:1–2.) He reiterated these points in his closing argument. (*See id.* at 383:7–20.) The trial court considered the arguments but rejected them as unpersuasive. This is the nature of advocacy—sometimes a counsel's strongest argument is not strong enough to prevail. The question is whether counsel's performance "fell below an objective standard of reasonableness," which it clearly did not. *Jones*, 2015 WL 430436 at *6.

Further, counsel's failure to object to J.R.'s unavailability does not change the analysis—as discussed above in Part II.A, the government was not required to produce J.R. at the suppression hearing. *See Malsom*, 779 F.2d at 1236 n.9. Failing to make a losing argument does not render a counsel's performance constitutionally ineffective.

### B. Admitting that officers did not intentionally lie

Next, Petitioner argues that his trial counsel provided ineffective assistance in acknowledging that detectives Avila and Cammack did not intentionally lie when they submitted their warrant applications. (*See* Hearing Transcript, at 381:21–24; 382:1–2) ("In this particular instance, Judge, it seems pretty clear that the officers, while maybe not being sinister in their motives were certainly not telling Judge Livas everything he needed to know, including things that perhaps they couldn't even tie up themselves."); *id.* at 389:21–24 ("I can't ascribe the

falsehood to the police because I don't think either one of them knew enough about the cases that they were investigating to deliberately be false.").)  Instead, counsel chose to argue that the detectives should have reviewed the files and previous reports in the case, which would have revealed the discrepancies in J.R.'s testimony.  (*See* Hearing Transcript at 390:1–4.)

Counsel's strategy here was objectively reasonable and arguably the most promising way to obtain relief for his client.  Under the Supreme Court's Fourth Amendment jurisprudence, "evidence seized pursuant to a warrant must be suppressed when the defendant shows by a preponderance of the evidence that (1) the affidavit in support of the warrant contains false statements or misleading omissions, (2) the false statements or omissions were made deliberately or with reckless disregard for the truth, and (3) probable cause would not have existed without the false statements and/or omissions."  *United States v. Williams*, 718 F.3d 644, 647 (7th Cir. 2013) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  Avila, who was responsible for submitting the warrant applications to the judge, testified that he did not intentionally omit the fact that J.R. had provided contradictory information in earlier meetings with law enforcement in the warrant application (*see id.* at 364:16;-24; 365:1–12), and there was no evidence to the contrary.  Counsel's comment that the officers did not necessarily have "sinister motives," therefore, rather than demonstrating ineffectiveness, reflected sound strategy.  Counsel's willingness to concede he could not establish actual knowledge of falsity, a more difficult standard, bolstered his credibility in arguing that the detectives acted with reckless disregard for the truth.  The court notes that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Petitioner offers nothing to rebut this presumption.

### C. Failure to file a "meritorious Fourth Amendment motion"

Petitioner does not elaborate on his argument that his trial counsel was ineffective for failing to file a "meritorious Fourth Amendment motion."  In any event, the record shows that

counsel did make such a motion (*see* St. Ct. Docket, Ex. O to St. Ct. Rec. at C244), and made the best available arguments in support of it. The fact that those arguments did not ultimately prevail does not establish ineffectiveness.

And regardless, even assuming Petitioner's counsel was ineffective, Petitioner cannot show any prejudice. *Strickland*, 466 U.S. at 687. During the motion to quash arrest and suppress evidence hearing, the trial court addressed the issue of J.R.'s prior statements and was satisfied that such statements, if included in the warrant application, would not have negated a probable cause finding because the remaining evidence was sufficient: J.R.'s subsequent correct identification, C.M.'s identification, and C.M. and her friend's identification of Pitts's vehicle plate number. The reviewing court did not unreasonably apply federal law as determined by the Supreme Court in finding that probable cause had existed to issue the warrants. *See* § 2254(d)(1); *Gates*, 462 U.S. at 238 (probable cause determination based on the totality of the circumstances); *Franks*, 438 U.S. at 171 (defendant is not entitled to a hearing if a warrant that included omitted information is still enough to establish probable cause). Failure to show prejudice under *Strickland* dooms his ineffective assistance claim. The court concludes that Petitioner's trial counsel was not constitutionally ineffective.

### III.     Certificate of Appealability

The court declines to issue a certificate of appealability because Pitts has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" exists only where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court's ruling is not one that jurists of reason would find debatable.

## **CONCLUSION**

The court denies Petitioner's habeas corpus petition [6] and declines to issue a certificate of appealability. Petitioner's motion for summary judgment [20] is denied as moot.

ENTER:

Dated: February 18, 2015

_____
REBECCA R. PALLMEYER
United States District Judge